**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

NEAL ENGWALL, *et al.,*
Plaintiffs,

v.

BOBBY TINSLEY, et al.,
Defendants, CASE NO: 8:22-cv-00638-WFJ-AAS

and,

PRIATEK, LLC, a Delaware Limited
Liability Company,
Nominal Defendant.
_______________________________________/

**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT BROUGHT BY DEFENDANTS JIM SAMPEY, BOBBY TINSELY, DAVID CHIDEKEL, JON NAJARIAN, MOSHE JOSHUA, AND DREAMDAZE TECHNOLOGY, INC. AND INCORPORATED MEMORANDUM OF LAW**

COME NOW, Defendants JIM SAMPEY, BOBBY TINSELY, DAVID CHIDEKEL, JON NAJARIAN, MOSHE JOSHUA, and DREAMDAZE TECHNOLOGY, INC. ("Movants"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6) hereby submit this Motion to Dismiss the Plaintiffs' Second Amended Complaint [Doc. 51] in this case, showing the Court as follows:

**CONTENTS**


| | | |
|---|---|---|
| I | Introduction | p. 2 |
| II | Motion to Dismiss Standard | p. 3 |

| | | |
|---|---|---|
| III. | Barvirkar As Source of Claims | p. 9 |
| IV. | Shareholder Derivative Prerequisites | p. 12 |
| V. | Plaintiffs Have Failed to State Shareholder Derivative Claims | p. 13 |
| VI. | Plaintiffs Have Failed to State Claims Under RICO | p. 16 |
| VII. | Plaintiffs Cannot Establish RICO Conspiracy Claims against the Movants in Count IV | p. 32 |
| VIII. | The Court Lacks Subject Matter Jurisdiction Over the Claims | p. 38 |
| IX. | Each Count Pleaded Against Movants Should Be Dismissed With Prejudice | p. 43 |
| X. | Conclusion and Prayer for Relief | p. 44 |
| * | Certificate of Service | p. 45 |


## I. Introduction.

Plaintiffs' Second Amended Complaint [Doc. 51][1] is 176 pages long, enumerates 1156 individual paragraphs, names 25 party defendants, and attaches 116 exhibits. The outrageously wordy shotgun pleading is unintelligible and fails to meet the basic pleading requirements under Federal Civil Procedure. Shockingly devoid of meaningful factual allegations, Plaintiffs attempt to rely on repeated conclusory allegations, meaningless recitation of the elements of cause of actions, and contradictory exhibits to support the claims against the Movants. What results is an unintelligible collection of disjointed, unconnected and random averments that fail to create a single cognizable claim.

[1] In this Motion, Movants will refer to the Second Amended Complaint as the "Complaint" in the body of the argument, since it is the operative complaint being reviewed by the Court.

The RICO claims against Movants are largely unintelligible, and clearly fail to allege the existence and structure of a true RICO enterprise, the necessary pattern of racketeering activity, continuity and threat of ongoing criminal activity, or any predicate act or a conspiracy attributable to the Movants.

Perhaps more critical to the entirety of the Plaintiffs' claims is their failure to allege that Movants actually took whatever VendXOR is and "invested" it in SKUx. Plaintiffs describe VendXOR as a "blockchain based, crypto currency project for vendors to issue and manage coupons, offers, and loyalty." Sec. Am. Cpl., para. 47. And Priatek and its VendXOR project defining characteristics is gaming interaction with kiosks (and potentially mobile devices). Sec. Am. Cpl., Ex. 78, p. 13. Despite this, Plaintiffs offer no allegation that the business SKUx is in includes cryptocurrency or gaming, and could have taken anything of value from VendXOR and Priatek or could be utilized at SKUx.

Instead, the Complaint really chronicles a business that failed through poor corporate governance, mismanagement, and a toxic managing member who burned through $16 million while running off talented employees, board members, and investors. And has filed this action as revenge against those who left.

## II. Motion to Dismiss Standard (Rule 12(b)(6)).

The purpose of a motion to dismiss for failure to state a claim is to determine whether a plaintiff's complaint states a legally sufficient claim for relief against a particular defendant. To survive a Rule 12(b)(6) motion to dismiss, the Plaintiffs' complaint must "contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.E.2d 929 (2007)). A claim is facially plausible when the Court can reasonably infer from the factual content pleaded that the defendant is liable for the alleged misconduct. Id. Plausibility requires more than a "sheer possibility that the defendant has acted unlawfully" but does not require a "probability" that the defendant is in the wrong. Id.

While the court accepts the Plaintiffs' allegations as true, legal conclusions *must be* supported by factual allegations. See Iqbal, 556 U.S. at 678 (emphasis added). For this reason, "'naked assertion[s]' devoid of 'further factual enhancement'" "labels and conclusions" and "formulaic recitations[s] of the elements of a cause of action" are not adequate. Id. (quoting Twombly, 550 U.S. at 555, 557). So, when considering a motion to dismiss, the Court "shall begin by identifying conclusory allegations that are not entitled to an assumption of truth" (Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010)), and "eliminate any allegations in the complaint that are merely legal conclusions." Iqbal, 556 U.S. at 678. But where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief" by pushing the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

In making that determination whether the claims are plausible, the courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta

v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Further, "courts may infer from the factual allegations in the complaint obvious alternative explanation, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." Id. The Court also need not accept, and will typically reject, a complaint that is a shotgun pleading, or one that, according to the Eleventh Circuit, is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." See Weiland v. Palm Beach Co. Sheriff's Office, 792 F.3d 1313, 1321 (11th Cir. 2015).

Additionally, in this case, Plaintiffs' RICO claims appear to be predicated on fraud and extortion. Thus, the allegations must comply not only with the plausibility criteria articulated in Twombly and Iqbal, but also with Rule 9(b)'s heightened pleading standard. Am. Dental Ass'n v. Cigna Corp., 605 F. 3d 1283, 12191 (11th Cir. 2010). To comply with Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)(per curium)(citation omitted). In other words, a plaintiff is required to plead the "who, what, when, where, and how" pertaining to the underlying fraud. Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006) (citation omitted). At bottom, the purpose of particularly pleading is to alert defendants to their precise misconduct and

protect them against baseless charges of fraudulent behavior. See Durham v. Business Management Associates, 847 F 2d 1505, 1511 (11th Cir. 1988)(citation omitted).

Plaintiffs' Complaint fails to sufficiently allege factual content such the Court can reasonably infer that the Movants are liable for the alleged misconduct. In part, the Complaint fails to meet the required standards because it systemically uses group allegations to obscure the actual parties who are involved in the alleged conduct, uses predominantly conclusory statements to support its claims, and repeatedly cites exhibits that are contrary to or unsupportive of the allegations. For these reasons, the claims against the Movants in the Complaint must be dismissed.

**A. Group Allegations Obscure Identification of Claims Against Individuals**

The Complaint is a confused mishmash of characters. The Complaint appears to name 25 individual defendants, but even that is not clear. Plaintiffs appear to initially allege that 17 individual defendants are part of what Plaintiffs name the "SKUX-Enterprise." Sec. Am. Cpl., para. 6. Then, in paragraph 70, Plaintiffs name only 16 parties of SKUX-Enterprise. Another four defendants are alleged to be in a separate fictional enterprise, Plaintiffs call the "I2W-Enterprise." Id. at para. 7. The confusion in the Complaint is amplified by the randomness and inconsistency of persons associated with various enterprises. Some defendants are alleged to be in both enterprises. Defendant SKUx, while sharing the name, is not identified as part of "SKUX-Enterprise." Three additional individuals, Kenneth Douglas, Bob Zaccardo, and Robert Quintana are not identified as associates of "SKUX-Enterprise" in paragraph 6, but they are later thrown into SKUX-Enterprise in paragraphs 74, 80, 84,

87, 90, 127, 172. Sec. Am. Cpl., para. 74. But after that, no RICO claims are brought against Kenneth Douglas, Bob Zaccardo, Robert Quintana, or SKUx.

The term "SKUX-Enterprise" appears at least 237 times in the Complaint and nearly every instance masks which of the 16, or 17, or possibly 20 associates is doing what, when, how and what injury they caused in furtherance of the alleged enterprise (or the resulting harm). Plaintiffs do nothing to clarify this confusion, and appear happy to allow the ambiguities of their poor pleading to cause the Movants and the other defendants to pour over the 1156 and 116 exhibits to try to figure out what they possibly did that would allow them to be charged with gravely serious RICO claims.

**B. Conclusory Allegations**

Wildly conclusory allegations litter the Complaint. For instances, throughout the Complaint, Plaintiffs repeat conclusory allegations related to the SKUX-Enterprise that fail to provide specific facts about the individual actors, acts, times, or means of performance.[2] The allegations related to the SKUX-Enterprise provide but one example of the type of indecipherable statements Plaintiffs alleged that provide no important factual support to their claims, and can be wholly ignored by the Court.

[2] By just referring to the actor as the "SKUX-Enterprise", Plaintiffs make the following conclusory allegations in the following Paragraphs: Paragraph 50 states it "desired VendXOR." Paragraph 51 says it "left Priatek to form SKUx." Paragraph 85 says it schemed to obtain VendXOR and left to form SKUx. Paragraph 88 alleges is sought to fraudulently remove Bharvirkar and sabotage Priatek. Paragraph 89 says is committed wire fraud. Paragraph 94 asserts it installed a new President at Priatek. Paragraph 131 alleges it "begins extortionate demands for control of Priatek's VendXOR project." Paragraph 152 alleges it responds to an MOU from Priatek. Paragraph 154 alleges it "absconded with VendXOR technology and assets." Paragraph 170 alleges it "invests the VendXOR platform technology into SKUX, LLC." Paragraph 207 vaguely concludes it provided I2W-Enterprise the opportunity to "take Priatek Assets." Paragraph 208 even more vaguely asserts it created opportunity for I2W-Enterprise to "avoid prosecution for their criminal act." Paragraph 225 alleges it sabotaged third-party investigations of its criminal activities.

C. **Plaintiffs' Self-Contradicting Exhibits**

The Complaint attaches 116 numbered exhibits. In general, they fail to sharpen or make cognizable the Plaintiffs' 1156 numbered allegations, which are describable as a random walk through several styles of shotgun pleading. Throughout the Motion, Movants identify the way these 116 exhibits either fail to support the conclusory allegations or directly contradict Plaintiffs allegations. It is impossible to easily map these endless contradictions, however, so attached as Appendix II, is a chart of many of conclusory allegations compared to exhibits demonstrating that the exhibit do not support or directly contradict the conclusory allegation. For Movants, the unsupported conclusory allegations must be ignored in their entirety when reviewing a motion to dismiss; when the exhibits directly contradict the allegation, the exhibits establish certain facts, as if they were clearly pleaded as an allegation by Plaintiffs. See Gill as Next Friend of K.C.R. v. Judd, 941 F.3d 504, 514 (11th Cir. 2019); Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007). Therefore, in the portions of this Motion that discuss individual claims, there will often be a discussion of how the Plaintiffs' exhibits contradict Plaintiffs' factual allegations as a clear basis for dismissing the claims. Id.

**III. Bharvirkar as Source and Participant**

The Complaint must be viewed through the lens of the source of the allegations, which allows the court to infer obvious plausible alternative explanations for the alleged conduct. Despite not being named as a party to the case, Priatek's Managing Member and former President, Milind Bharvirkar ("Bharvirkar") is the

source of the claims that are being alleged in this matter. Tellingly, every allegation, including the scant factual allegations, show how, one-by-one, the Defendants became unwilling to put up with Bharvirkar's mismanagement and self-dealing, and the destructive effect his actions had on Priatek. As can be seen from the allegations, and throughout the exhibits attached to the Complaint, the defendants, all people who worked for and desired the success of Priatek, were driven away by Bharvirkar's destructive behavior. Tellingly, every former board member, employee, and officer, who sought to prevent or correct Bharvirkar's previously-unchecked abuses and unilateral mismanagement have now wrongfully been named as conspirators of a RICO enterprise in this action. While Bharkirvar is suspiciously absent from the list of parties, the Complaint is Bharvirkar's fourth attempt to pursue his personal vendetta against these defendants and claim he was the innocent target of some vast conspiracy.

Bharvirkar is and was the sole person in charge of all decisions at Priatek. According to the few pages of Priatek's Operating Agreement attached as Exhibit 3 to the Complaint, Bharvirkar had plenary power over the day-to-day operations of Priatek, including its financial accounts, who it hired or fired, how money would be raised and spent, and whether to pursue or defend lawsuits. Sec. Am. Cpl., Ex. 3.

Bharvirkar maintained control throughout all the relevant times in Plaintiffs' Complaint, despite Plaintiffs wishes to allege otherwise.[3]

After years of Bharvirkar's horrible stewardship of managing the company, John Glasscock notified him of his intent to Arbitrate through a derivative claim on behalf of Priatek on June 17, 2019. Sec. Am. Cpl., para. 290, Ex 91. Glasscock seeks redress for Bharvirkar's abhorrent management that drove off key employees, his waste of millions of dollars of investors' funds, failure to pay rent or preserve assets and other destructive conduct that depleted Priatek investor funds and ruined the company. Bharvirkar filed for personal bankruptcy on February 26, 2021, to avoid taking responsibility (and blame others)[4] and Glasscock filed an Adversarial Proceeding against Bharvirkar. While the actual bankruptcy is not attached to the Complaint, it is referenced in paragraph 288 and Exhibit 2. In that Bankruptcy, of which the Movants urge the Court to take judicial notice as an integral part of the allegations and Exhibits of the Complaint, Bharvirkar entered a Settlement Agreement by which Priatek would license kiosks for Bharvirkar's Replay eSports to generate money for Glasscock and for Priatek. Plaintiffs attached the license agreement at Exhibit 102 of the Complaint, but did not attach the Settlement Agreement which is summarized on December 3, 2021 in Case 6:21-bk00835-GER in the United States Bankruptcy Court for the Middle District of Florida at Doc. 117

[3] "[T]here is no transfer of control to be done by the Board, Milind has maintained control the entire time and he has stated he will not relinquish control without a massive payout." Sec. Am. Cpl., Ex. 32, p. 10.

[4] Plaintiffs allege Priatek was driven in bankruptcy (*see e.g.,* Sec. Am. Cpl., para. 32), but he was not. Bharvirkar filed personal bankruptcy.

in the Bankruptcy [BK-Doc. 117]. Plaintiffs' counsel, Derek Usman, represented Bharvirkar, of which Movants request that the Court take Judicial Notice.

In the Bankruptcy, Mr. Usman and Bharvirkar, purporting to act on behalf of Priatek, filed the first version of the current action in a Counterclaim and Third-Party Complaint to Glasscock's derivative action against him (the "BK TPC") [BK Doc. 26].[5] The BK TPC contains 38 Exhibits common to the Complaint and dozens of verbatim duplications of the allegations now alleged by Plaintiffs.[6] After the conclusion of the BK TPC, on March 3, 2022, Usman filed the second iteration of Bharvirkar allegation in the present action, and has twice amended those claims. Every wrong that the Plaintiffs now claim they have a right to bring as a derivative claim on behalf of Priatek is a wrong that Bharvirkar previously claimed was an individual wrong against him.

## IV. Shareholder Derivative Prerequisites

In general, shareholders cannot sue for injuries to a corporation. Christoff v. Inglese, 2022 U.S. Dist. LEXIS 5458 *2, case no. 2:20-cv-546-SPC-NPM (M.D. Fla. Jan. 11, 2022), citing James Talcott, Inc. v. McDowell, 148 So. 2d 36, 37 (Fla 3d DCA 1962). Instead, the company must sue in its own name. Id. But there is a limited exception to this broad rule; sometimes a shareholder may sue for an injury to its corporation by bringing a "derivative" action. Id.

[5] The BK TPC was dismissed
[6] A table analyzing the common exhibits and paragraph is attached hereto as Appendix I.

The Eleventh Circuit recognizes that "a shareholder derivative suit is an extraordinary procedural device, 'to be used only when it is clear that the corporation will not act to redress the alleged injury to itself.'" Stepak v. Addison, 20 F.3d 398, 402 (11th Cir.1994) (quoting 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1831, at 96 (1986)). Plunkett v. Poyner, No. 08-60953-CIV-COHN, 2009 WL 5176542, at *5 (S.D. Fla. Dec. 22, 2009). The first requirement for bringing a derivative action as a shareholder is satisfying the condition precedent to suit that the shareholder must first give the company a chance to act. Rappaport v. Scherr, 322 So. 3d 138, 142 (Fla. 3d DCA 2021). Only then, the shareholder may attain standing to proceed with the suit if the company's board wrongfully rejects the demand to act, or if such demand was never made because it would have been futile. Stepak, 20 F.3d at 402.

In Florida, as to limited liability companies, this shareholder demand condition is codified by statute, at Section 605.0802, Florida Statutes. Fla. Stat. § 605.0802. The failure to conform to and comply with this codified shareholder demand prerequisite requires dismissal of the shareholder's unauthorized complaint. Christoff, 2022 U.S. Dist. LEXIS5458 * 4 n. 4 (collecting cases).

## V. Plaintiffs Have Failed to State a Shareholder Derivative Claim

The Complaint as a whole is presented as a derivative action. Sec. Am. Cpl., pp. 1, 2, 4-7. Plaintiffs concede, at paragraph 14 of the Complaint, that Plaintiffs "did not make a demand" to the Priatek company Board of Directors. Id. at pp. 4, para. 14. Plaintiffs aver that no demand was made because it would have been futile. Id. But

Plaintiffs utterly fail to describe any plausible reason why their missing pre-suit demand would have been futile.

Importantly, derivative actions require a higher standard than non-derivative claims, for pleading the essential facts. Staehr v. Alm, 269 Fed. Appx. 888, 891 (11th Cir. 2008); Fed. R. Civ. P. 23.1. In addition, all allegations in a putative derivative claim—demand futility included—are also subject to the Twombly/Iqbal plausibility standard for fact pleading. See Christoff, 2022 U.S. Dist. LEXIS 5458 *2; see also Silver Crown Invs., LLC v. Team Real Estate Mgmt., LLC, 349 F. Supp. 3d 1316, 1328, 1331 (S.D. Fla. 2018)(dismissing derivative count for failure to plead demand futility with particularity).

Starting with paragraph 14 of the Complaint, Plaintiffs fail to satisfy this plausibility standard by withholding any allegation that establishes beyond the mere label or conclusion of 'futile' any reason why a pre-suit demand could not have been considered by a board exercising "independent business judgment." Sec. Am. Cpl., paras.14-31; see Firehouse Gallery, LLC v. Phillips, case no. 8:09-cv-T-17-MAP, 2009 U. Dist. LEXIS 113476 *12-13, (M.D. Fla. Nov. 19, 2009)(a company board evaluates a pre-suit derivative demand through its independent business judgment, and derivative allegations must account for this). Placing a spotlight on the 'derivative allegations' segment of the Second Amended Complaint, very little of coherence can be made of its contents—an example of this sub-standard pleading is an incomplete anecdote alluding to but not explaining *how the presence of Priatek's kiosks at Sea World* is probative of the Priatek board's "collusion" against Priatek. Sec. Am. Cpl., para. 20.

Of further importance to the plausibility review of Plaintiffs' "futility" allegation, there is Exhibit 3, where Plaintiffs attach the Priatek Operating Agreement. A cursory reading of the Complaint shows that Bharvirkar, Priatek's Managing Member, has been instrumental in preparing this action by Plaintiffs. The Operating Agreement and amendments attached to the Complaint, even though they inexplicably do not include the full text of those documents, state that the Managing Member has the authority to bring the action. Specifically, the Operating Agreement sets out the rights and responsibility of the Managing Member. Article XI, Section 11.1 entitled the "Powers, Duties and Obligations of the Managing Members" states:

> The following enumeration of powers is in amplification, and not in limitation, of the general powers and authority of the Managing Member, as conferred by the Board of Directors, on behalf of and in the name of the Limited Liability Company…. – To institute, prosecute, defend and settle any legal or administrative action or proceeding on behalf of, or against, [Priatek, LLC], and to Join in any litigation against any individual Limited Liability Company Member in any cause of action against the Limited Liability Company." See Sec. Am. Cpl., Ex. 3.

Based on this, it appears that the Plaintiffs need only have sought the approval of Bharvirkar as the Managing Member of Priatek. However, Plaintiffs never address why they never demanded Managing Member, even though Bharvirkar's hand and style is evident throughout the Complaint, to initiate the claims in the Complaint with Priatek as the named plaintiff. While the Plaintiffs act as apologists for the Managing Member's behavior that led to the prodigious squandering of funds, loss of employees, severe board turnover, managerial turmoil, and, based on the allegations, everyone named as a defendant in the Complaint apparently turning against him, they do not

explain why he did not authorize the Complaint or why it would be futile to have him authorize the lawsuit.

The Court, in analyzing for plausibility as to the "futility" allegation, is also permitted to analyze whether the presumed good business judgment of Priatek's board would have resulted in a sensible decision to not pursue the frivolous claims Plaintiffs assert. Plaintiffs' own Exhibit 1, the special investigative report, seems to establish that the Priatek board's investigation of Priatek's specific pre-suit circumstances did not result in a recommendation of litigation. And yet it did result in a number of material inter-company reforms, including the resignation of the Managing Member. Plaintiffs' Exhibit 1 is a source of alleged fact, that becomes part of Plaintiffs' pleading, that shows that the Priatek board did consider complaints over the very circumstances that would have (and should have) been presented by Plaintiffs as a pre-suit demand, and that shows that the board did not ignore the same, but enacted reforms to address them. Sec. Am. Cpl., Ex. 1, pp. 1-11. This responsible business oversight behavior by the board raises the inference that here there was the opposite of the condition of "futility" Plaintiffs merely conclude prevented them from fulfilling the demand prerequisite.

In summary, while Plaintiffs' Complaint presents 12 counts that each are styled as a derivation action, the actual allegations Plaintiffs make reveal that they attempt to misuse the derivative form of action that exists as an exception to the rule that shareholders may not sue for injuries to the corporation, and also reveal that they have failed to comply with Rule 23.1, and Fla. Stat. § 605.0802, and the Iqbal/Twombly

standard for fact pleading. Accordingly, on top of the various flaws in the substance of the legal claims at each count of the Complaint, which flaws are addressed separately throughout this Motion, each such count also fails as a derivative claim and should therefore be dismissed.

## VI. Plaintiffs fail to state a claim under RICO so Counts II, III, and IV should be dismissed against the Movants in their entirety

As an initial matter, RICO is widely misused by private parties to create the appearance of criminality for otherwise mundane civil disputes. That abusive use of the RICO Act is at its most extreme in this case. The alleged associates of the "SKUX Enterprise" are nothing more than talented former officers and employees who were no longer willing to work for Priatek if Bharvirkar remained in exclusive control, and the Movants left and started their own company after adequate changes were not made.

Through a collection of conclusory allegations, Plaintiffs allege meritless RICO claims against the Defendants involved in the "SKUx Enterprise" in Count II (18 U.S.C.A. § 1962(a)), Counts III (18 U.S.C.A. § 1962 (c)) and Count IV (18 U.S.C.A. § 1962 (d)). Under 18 U.S.C. § 1962 (a), the law proscribes: (1) investing income derived, directly or indirectly, from a pattern of racketeering activity in any enterprise which affects interstate commerce; under Subsection (c) conducting or participating in the affairs of any enterprise which affects interstate commerce through a pattern of racketeering activity or collection of unlawful debt; and under Subsection (d)

conspiring to violate any of the provisions of subsections (a) or (c). In re Managed Care Litig., 135 F. Supp. 2d 1253, 1258 (S.D. Fla. 2001).

Regardless of the subsection, "[t]o state a claim under RICO, a plaintiff must allege each of the following four elements: (1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima S.P.R.L. v. Imrex Co. Inc., 473 U.S. 479, 105 S. Ct. 3275, 3285 (1985). To satisfy the requisite heightened pleading standard, civil complaints under the RICO must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud. 18 U.S.C.A. § 1961 et seq; Fed.R. Civ.P. 9(b); Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309 (2007). A plaintiff must also show that the violation of 18 U.S.C. § 1962 was an injury to business or property and that such injury was "by reason of" the substantive RICO violation. Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282–1283 (11th Cir.2006); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.1991). In each of their instant RICO claims, Plaintiffs fail to provide factual allegation sufficient to show that any of the four required elements were met. As such, all the RICO claims against the Defendants must be dismissed.

**A. Plaintiffs have failed to allege facts that there was conduct of an enterprise sufficient to support a RICO claim**

Plaintiffs have failed to allege facts that there was conduct of an enterprise sufficient to support a RICO claim. Regarding elements and (1) and (2) of the four-

part test under § 1962(c), Plaintiffs must establish "conduct of an enterprise" and that the enterprise had "a common purpose of engaging in a course of conduct." Boyle v. United States, 556 U.S. 938, 944 (citing United States v. Turkette, 452 U.S. 576, 583 (1981). A RICO enterprise exists "where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." United States v. Hewes, 729 F.2d 1302, 1311 (11th Cir.1984); Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1264 (11th Cir. 2004).

Furthermore, the Plaintiffs must allege with detailed factual claims, pursuant to Iqbal, that each defendant participated, directly or indirectly, in the operation or management of the enterprise itself. See Reves v. Ernst & Young, 507 U.S. 170, 185 (1993)("In sum, we hold that 'to conduct, or participate directly or indirectly, in the conduct of such enterprise's affairs' under § 1962(c), one must participate in the operation or management of the enterprise itself."). An association-in-fact enterprise, as plead here, must have a structure. Boyle, 556 U.S. at 945. "The existence of an enterprise is an element distinct from a pattern of racketeering activity." Id. at 947.

The existence of an enterprise may be proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Turkette, 452 U.S. at 583. Although RICO liability is not limited to those with primary responsibility for the enterprise's affairs, the Supreme Court has held that the "operation or management test" requires that "one must have some part in directing those affairs." Reves, 507 U.S. at 179.

Here, Plaintiffs attempt to create the appearance of an enterprise simply by naming it "SKUX-Enterprise" and listing 17-20 individual Defendants as "associates". Sec. Am. Cpl., paras. 6, 70. However, Plaintiffs simply calling something an "enterprise" and listing people as "associates" completely fails to meet the requisite pleading standard to show there is an "enterprise" necessary to support RICO claims. In the Complaint, Plaintiffs do not provide any factual allegations that show that there was any meaningful structure to the "SKUX-Enterprise". There is no discussion as to who was in charge, what roles each individual played in that enterprise, or other indicia of association structure. Instead, the term "SKUX-Enterprise" is used throughout the Complaint to obscure, not clarify, any individual's role, participation, or act any party who was named as a defendant seeking to glean what wrong they are accused of committing. Moreover, Plaintiffs do not provide any necessary allegations showing that each of these 17 individuals had "some part in directing [the] affairs" of the amorphous "SKUX-Enterprise." The most that can be said about some, but not all, of these individuals – which does not meet the requirements of an enterprise – is that at some time they expressed their concerns with Bharvirkar's mismanagement of Priatek and took action to prevent him from further harming Priatek, or were friendly with someone who was critical of Bharvirkar. That is the only plausible explanation for the facts alleged, not the formation of a vast criminal enterprise.

More importantly, there is nothing showing that this undefined enterprise had "a common purpose" of "engaging in a course of conduct" and the enterprise had "the purpose of conducting illegal activity." In fact, Plaintiffs' inconsistent allegations belie

the existence of any common enterprise, let alone one with the "purpose of conducting illegal activity." There are no factual allegations that plausibly support the position that, like the mafia or a street gang, the "SKUX-Enterprise" was formed with the common purpose of committing crimes. The allegations invariably show that all of the so-called associates of the "SKUX-Enterprise" were (or remain) officers, board members, investors and/or employees of Priatek, not individuals drawn together by the common purpose conducting illegal activity. When the members of four separate advisory boards, former officers, contractors, advisors, and investors all identified Bharvirkar's continued controlling role at Priatek as the thing threatening to destroy the company, that was evidence of a corporate disaster, not a criminal enterprise.

The Plaintiffs' failure to establish any coherent enterprise tying the individuals together impacts the entirety of the RICO claims alleged against the SKUX-Enterprise defendants. Because the association between the 17 named individuals is mostly haphazard, so too are the Plaintiffs' attempts connect the various isolated and sporadic actions to show that they "function as a continuing unit." The reason that it seems so forced, and the allegations seem so disjointed, is because they are not part of some organized agenda of an enterprise.

**B. The Plaintiffs fail to establish a pattern of racketeering activity**

A RICO "pattern of racketeering activity" requires at least two "qualifying predicate acts," each of which constitutes "a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1087 (11th Cir. 2004); Gordon Food Serv., Inc. v. Price Armstrong, LLC, No. 6:20-

CV-2273-GAP-GJK, 2021 WL 7448881, at *3 (M.D. Fla. July 8, 2021). Although two predicate acts are a prerequisite to establishing a pattern of racketeering activity, they are not by themselves sufficient. Sedima, 105 S. Ct. at 3285 n. 14. To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature. See 18 U.S.C. § 1961(5); H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239–43, 109 S.Ct. 2893, 2900–2903, 106 L.Ed.2d 195 (1989); see also State v. Lucas, 600 So.2d 1093, 1094 (Fla.1992) (adopting the criteria set forth in H.J. Inc.); Jackson, 372 F.3d at 1264.

It is well established that in order to prove a "pattern of racketeering activity" it is not sufficient to simply establish two isolated predicate acts. RICO targets *ongoing* criminal activity, rather than sporadic, isolated criminal acts. Jackson, 372 F.3d at 1264–65. As the Supreme Court has explained, while two acts are necessary, they may not be sufficient. Id. Indeed, in common parlance, two of anything do not generally form a "pattern." Id. The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969)S.Rep. No. 91–617, p. 158 (1969) (emphasis added).... Significantly, in defining "pattern" in a later provision of the same

bill, Congress was more enlightening: "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. 18 U.S.C. § 3575(e)." Jackson, 372 F.3d 1264–65, quoting, Sedima, 473 U.S. at 497 n. 14.

C. **There Is No Continuity to Support Plaintiffs' RICO Claims.**

"To establish a pattern there must be a showing of more than one racketeering activity and the threat of continuing activity." Durham, 847 F 2d at 1511; Kivisto v. Miller, Canfield, Paddock & Stone, PLC, 413 F. App'x 136, 138 (11th Cir. 2011). The continuity element of a pattern of racketeering activity is crucial to a valid RICO claim to ensure that the crime alleged is the sort of offense that RICO is designed to address—one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future. Jackson, 372 F.3d at 1265. Assuming, *arguendo*, Plaintiffs had adequately plead factual allegations related to the other elements of a RICO claim, Plaintiffs still fail to allege the requisite continuity necessary to bring RICO claims against the Defendants.

Continuity may be established in one of two ways. A plaintiff may prove closed-ended continuity by showing "a closed period of repeated conduct," or the plaintiff may prove open-ended continuity by showing "past conduct that by its nature projects into the future with a threat of repetition." Id. (quoting H.J. Inc., 492 U.S. at 241–42).

For close-ended continuity, the 11th Circuit has determined that an alleged scheme lasting approximately six months "was accomplished in too short a period of

time ... to qualify it as a pattern of racketeering activity." Aldridge v. Lily–Tulip, Inc. Salary Ret. Plan Benefits Comm., 953 F.2d 587, 593 (11th Cir.1992); see also Hutchinson v. Wickes Cos., Inc., 726 F.Supp. 1315, 1320 (N.D.Ga.1989) (questioning in *dicta* whether two years can be a "substantial period of time"). Likewise, when a civil RICO claim is brought with respect to a closed period of time, continuity cannot be shown by allegations of a scheme that lasted only nine months. See Jackson, 372 F.3d 1264-67 (applying federal precedent in the context of a Florida RICO claim).

Here, Plaintiffs' allegations plainly fail to allege facts sufficient to establish closed-ended continuity. At most, taking the scattershot allegations as true and in the light most favorable to the Plaintiffs, the Complaint alleges that the Movants quit, attempted to negotiate for the control of VendXOR (the putative extortion), and then took intellectual property to form a new competing company, SKUx, between September and October 2018. Any examination of the issue must begin with the Supreme Court's warning that predicate acts "extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement...." Id. at 1266, quoting H.J. Inc., 492 U.S. at 242. The one month identified here is significantly shorter than the 9-months that was said to be too short as a matter of law.

Further, even taking allegations as true, Plaintiffs cannot show continuity because the ill-defined SKUX-Enterprise has only a single, discrete goal: the theft of VendXOR. "[W]here the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." Jackson, 372 F.3d at

1266. Here, the period was significantly shorter than a year and it concerned only a discrete goal, such that it cannot have the requisite continuity.

Likewise, Plaintiffs try but fail to allege open-ended continuity. An open-ended continuity cannot be shown by conclusory allegations that once begun, the alleged misconduct threatens to continue into the future. Jackson, 372 F.3d at 1267-69; Kivisto, 413 F. App'x at 138. Plaintiffs only allegations related to open-ended continuity is the facially deficient conclusory statement that "[t]hese illegal actions of the SKUX-Enterprise … are a prelude to further criminal acts in violation of federal racketeering statutes and many other state laws that continue to this day." Sec. Am. Cpl., para. 63. As such, Plaintiffs have not established continuity.

### D. Plaintiffs Fail to Adequately Allege Predicate Acts

Plaintiffs consistently use conclusory allegations and recitation of elements to support their claims that there were predicate acts. For the Movants, Plaintiffs only identify three types of predicate acts: Theft of Trade Secrets, Mail and Wire Fraud, and Extortion. Obviously, just calling something a predicate act does not make it one. And because Plaintiffs fail to adequately allege the factual basis for the legal elements of each predicate act based on the requisite standard of pleading, the RICO claims must be dismissed. See, e.g., Kivisto, 413 F. App'x at 140 (Plaintiffs failure to sufficiently plead facts that any of the defendants committed either mail fraud or extortion, the district court did not err in dismissing his substantive RICO claims).

#### 1. There Has Been No Theft of Trade Secrets.

The allegations in the Complaint are insufficient to state a claim for misappropriation of trade secrets. While Plaintiffs may not be required to identify the alleged trade secrets with "particularity," it must "allege sufficient facts to plausibly show a trade secret was involved and...give the defendant notice of the material it claims constituted a trade secret." Gordon Food Serv., Inc., 2021 WL 7448881, at *6. Plaintiffs fail to do so. In conclusory statements, Plaintiffs state that "Tinsley intended to convert a trade secret (VendXOR) intended for use in interstate commerce, knowing that his action was injurious to Priatek" and "Tinsley obtained Priatek blockchain project's business methods and processes that Priatek had taken reasonable efforts to keep secret and the secrets had independent economic value in the commercial workspace." Sec. Am. Cpl. paras. 376-7; 493-4. Priatek does not allege any non-conclusory facts to suggest that there were any actual trade secrets that were capable of being stolen—that is, information that derives independent economic value from not being generally known and that was not ascertainable through proper means. A defendant commits misappropriation when it "use[s] ... the trade secret despite a duty to maintain secrecy." Freedom Mortg. Corp. v. Strong Home Mortg., LLC, No. 20-81721-CV, 2020 WL 8642053, at *3 (S.D. Fla. Dec. 15, 2020) (citations omitted). Absent specific facts showing Tinsley took anything from Priatek, coupled with Priatek's concreate efforts to keep certain information that was later used secret, Plaintiffs have not plead a theft as a predicate act. Plaintiffs appear to be under the misapprehension that the fact that Tinsley left Priatek and started a separate company

after leaving Priatek that deals with coupons is conclusive proof of a predicate act of theft of trade secrets, when it falls woefully short.

Even if Plaintiffs had adequately plead the existence of trade secrets, it fails to allege that the Tinsley or any of the Defendants misappropriated the trade secrets. Specifically, apart from the conclusory allegations, Plaintiffs do not explain *how* Tinsley used its purported trade secrets. The business methods and processes that were allegedly the subject of the misappropriation related to VendXOR, "a blockchain based, cryptocurrency project" (Sec. Am. Cpl., para. 47), would necessarily relate to using that information to create another blockchain cryptocurrency project. That is not alleged, and cannot be alleged, because Tinsley and SKUx have nothing to do with cryptocurrency and categorically could not have used the same methods, processes, software or technology that was used by VendXOR. Accordingly, Plaintiffs' claim for misappropriation of trade secrets fails and cannot serve as a RICO predicate act. Knights Armament Co. v. Optical Sys. Tech., Inc., 568 F. Supp. 2d 1369, 1377 (M.D. Fla. 2008) (dismissing a trade secrets claim where the plaintiff alleged that the defendants had access to its trade secrets but gave no further details as to how the defendants allegedly used them); Gordon Food Serv., Inc. 2021 WL 7448881 at *6.

**2. There has been no Mail and Wire Fraud.**

A "scheme to defraud" requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property. United States v. Bradley, 644 F. 3d 1213, 1238 (11th Cir. 2011); Cardenas v. Toyota Motor Corporation, 418 F. Supp. 3d 1090, 1098-99 (S.D. Fla. 2019). A

RICO plaintiff must plead mail fraud and wire fraud with particularity in accordance with Fed. R. Civ. P. 9(b) and set forth the time, place and person responsible for each act. Brooks, 116 F.3d at 1380–82; Ageloff v. Kiley, 318 F.Supp.2d 1157, 1159 (S.D.Fla.2004); Durso v. Summer Brook Preserve Homeowners Ass'n, 641 F.Supp.2d 1256, 1265–66 (M.D.Fla.2008). Plaintiffs fail to do that.

In Count II, Plaintiffs lone allegation against Sampey related to Mail and Wire Fraud is "Sampey, as signatory, distributes the September 10 *and* 11, 2018 letter with the false allegation regarding Priatek, and its President/Managing Member using the United State postal service and electronic mail (email). (Exhibit 12, 13, 93)." Sec. Am. Cpl., para. 388. Aside from their conclusory allegation that the letters contain "false allegations regarding Priatek, and its President/Managing Member", Plaintiffs do not identify any statement or misrepresentation that was made by Sampey. Without identifying any misrepresentation, Plaintiffs fail to meet the essential element of wire fraud.

Moreover, looking at the letters themselves (Exhibit 12 and 13), they are communications from the Board of Directors to Barvirkar directing him not to take action given the concerns with his behavior or prematurely seeking further investment based on cryptocurrency. In adopting Bharvirkar's positions, the Plaintiffs blindly allege that the concerns that Sampey raised about corporate governance and the Bharvirkar's mismanagement of Priatek's finances were wholly without merit and designed to defraud Priatek and wrest control of VendXOR away from Priatek. The Exhibits attached to the Complaint and relied on by Plaintiffs belie the allegations that

the concerns Sampey raised as a Board Member about Bharvirkar were misrepresentations.[7] For instance, the report provided in Exhibit 42 by Cendrowski Corporate Advisors, LLC for Priatek provides an extensive list of concerns about Bharvirkar's poor performance, problematic corporate governance, and record keeping, and specifically, Bharvirkar's sole use (and misuse) of corporate credit cards, debit cards, and advances, the propriety of which could not be established or corroborated through expense reports. Furthermore, Exhibit 30, a September 21, 2023 email between John Colby and Priatek's counsel, Umera Ali (which Priatek waived privilege by disclosing) shows that there are breach of Blue Sky laws, and corporate governance issues. Even though Plaintiffs failed to sufficiently alleges a cognizable fraud claim under RICO and Rule 9, the documents attached to the Complaint categorically show that Sampey made no such representation.

**3. There has been no Conspiracy to violate 18 U.S.C. § 1951 ("Hobbes Act")**

Throughout the Complaint, Plaintiffs use the word "extortion" in an attempt to bypass the requirement that they actually show the elements of extortion as a necessary predicate to a RICO claim. The Hobbs Act criminalizes interference with interstate commerce by extortion, which is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right" Wilkie v. Robbins, 551 U.S. 537, 563, 127 S. Ct. 2588, 2605, 168 L. Ed. 2d 389 (2007); In re Managed Care Litig., 135 F. Supp. 2d. at

[7] As provided in greater detail in the Motion to Dismiss related to Breach of Fiduciary Duty, Sampey's actions to stop Bharkirvar's actions are also protected by the business judgment rule.

1263. In order to qualify as a predicate act under the federal RICO statute, the conduct must be capable of being generically classified as extortionate: that is, "obtaining something of value from another with his consent induced by the wrongful use of force, fear or threats." Raney, 370 F.3d at 1088.

Plaintiffs categorically fail meet the pleading criteria for extortion by failing to show that 1) Movants actually used fear or threats against Priatek, 2) anything of value was given to Movants by Priatek based on that fear, and 3) that, even if any threats were made, they were not wrongful. For these reasons, the claims must be dismissed.

First, the allegations do not show that Tinsley and Sampey actually made threats to Priatek. For both Tinsley and Sampey, Plaintiffs attempt to impute the contents of text messages sent by Richard Waters and Honsi Tamboli to Barvirkar as predicate acts attributable to Tinsley and Sampey. Other than Plaintiffs' conclusory allegations, there is no connection between Waters and Tamboli and Tinsley and Sampey. Waters and Tamboli are not part of SKUx that was formed after Tinsley and Sampey they quit Priatek. There are not and cannot be any truthful allegation that Tamboli or Waters had any investment in SKUx. Neither "threat" was made by either Tinsley or Sampey, nor is there any allegation that either of them instructed anyone to send such texts, or that they gained anything from the threats. Moreover, the allegations and attached exhibits show that other close to Bharvirkar had grave concerns about how he had managed Priatek and the negative effect it would have on Priatek if he was allowed to continue without proper oversight and governance.

Next, the allegations do not identify anything of value was actually given to Movants in exchange for the threats. At most, Plaintiffs allege that Tinsley *wanted* a promotion, Sampey *wanted* more VendXOR cryptocurrency when it was issued, and they both *wanted* to be in control of VendXOR without Bharvirkar. Plaintiffs do not state that Tamboli or Waters wanted anything. The Plaintiffs fail to show that Tinsley or Sampey got anything. The allegations show that Tinsley resigned (instead of continuing to work with Bharvirkar) (Sec. Am. Cpl., Ex. 19), Sampey quit and never received any cryptocurrency, and no agreement was ever reached for Tinsley and Sampey to control VendXOR.

Finally, the allegations do not show that any alleged "threats" made by Tinsley or Sampey was wrongful. For Sampey, the "threats" all related to legitimate concerns that he had as a board member. Plaintiffs claim that, while a board member of Priatek, Sampey sent emails between September 9-12, 2018, that listed concerns that board members and investors have with Priatek's participation in Tokenfest given the possible SEC violations, problems with corporate governance, and improprieties of Bharvirkar. See Sec. Am. Cpl., Exs. 12-14, 18, 61. The "threats" were not made to Priatek, they were concerns raised about Bharvirkar mismanagement and problems with corporate governance that called for an investigation. The Exhibits attached to the Complaint show that those concerns were not wrongful. See Sec. Am. Cpl., Ex. 42 (The internal investigation that was performed show that Bharvirkar did not adequately track the advances that were made to him, and that many corporate governance issues needed to be addressed).

Likewise, the concerns raised by Tinsley about Bharvirkar are not wrongful. Even assuming, *arguendo*, that Tinsley made "threats" and told investors what his concerns were about Bharvirkar, corporate governance, mishandling of funds, and violations of the SEC Blue Sky laws, all of those concerns were legitimate. The Complaint and its exhibits are replete with investigators hired by Priatek, former and current board members, investors, officers, contractors, employees, and others raising those same concerns.

Furthermore, while the "threats" allegedly authored by Tamboli and Waters are not attributable to Tinsley or Sampey, those communications were not wrongful or designed to harm Priatek but to afford change in Bharvirkar. For instance, the texts between Bharvirkar and Tamboli, Tamboli shows concern both for Priatek and Bharvirkar, as exchange between friends. Far from demonstrating that Bharvirkar was intimidated by Tamboli's supposed "threats", Bharvirkar response is actually appreciative of Tamboli: "Thank you. Thank you for the call. To correct myself, you've helped tremendously and I'm very appreciative." Sec. Am. Cpl., Ex. 66.

Moreover, Plaintiffs rely heavily on the September 22, 2018 email (Sec. Am. Cpl., Ex. 25) listing terms for negotiations between Priatek and Tinsley and Sampey (and the "SKUX-Enterprise") as proof of wrongful demand for control of VendXOR. This email was sent after Tinsley and Sampey had quit Priatek, and the board was attempting to negotiate their return and deal with Tinsley and Sampey's concerns. The terms for negotiation in that email clearly seek to address concerns with Bharvirkar and corporate governance as means to convince them to come back to Priatek. What

the Plaintiffs call "extortion" as it relates to negotiations for control of VendXOR does not fit into the category of wrongful. Take-it-or-leave-it bargaining alone is not wrongful enough to establish the requisite coercion for an extortion claim under RICO. See Lee v. Flightsafety Services Corp., 20 F.3d 428, 433 (11th Cir.1994). The allegations that Tinsley and Sampey demanded certain concessions, including the removal of Barvirkar and control over VendXOR, if they were to return to work with Priatek after leaving were not wrongful. A successful extortion theory requires that the fear of economic loss is separate and distinct from performance and the claim cannot be maintained when the "only fear of economic loss is that which accompanies any party to a contract when he suspects that compliance and compensation may not be forthcoming." See id.; In re Managed Care Litig., 135 F. Supp. 2d at 1263–64; Robert Suris Gen. Contractor Corp. v. New Metropolitan Fed. Sav. & Loan Ass'n, 873 F.2d 1401, 1405 (11th Cir.1989).

## VII. Plaintiffs Cannot Establish RICO Conspiracy Claims Against Movants in Count IV

Additionally, Plaintiffs bring claims against Defendants Najarian, Chidekel, Joshua, and Dreamdaze in Count IV under 18 U.S.C.A. § 1962 (d) alleging they conspired "to violate any of the provisions of subsections (a) or (c)." "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." American Dental, 605 F.3d at 1293 (quotation omitted). Further, "[t]o be guilty of conspiracy...parties must have agreed

to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law." Jackson, 372 F.3d at 1269 (quotation omitted); Kivisto, 413 F. App'x 136, 139 (11th Cir. 2011). Plaintiffs fail to allege RICO conspiracy claims against any of the Movants.

**A. Count IV Fails to State a RICO Conspiracy Claim against Najarian**

Plaintiffs' allegations against Jon Najarian for a RICO Conspiracy contain nothing but conclusory statements. Sec. Am. Cpl., paras. 656-664. No cognizable predicate act is alleged. Plaintiffs cite their Exhibit 11 which is a September 23, 2018 email from Jeremy Ramos in which Ramos recounts hearing Tinsley say he wanted to be president of the crypto project at Priatek and tried to rally support of other for that aspiration. Najarian is not mentioned. Plaintiffs allege Najarian signed an advisory agreement with non-compete covenants and cites Exhibit 110 as proof. Sec. Am. Cpl., para. 661 (citing Exhibit 110). However, Exhibit 110 is a press release dated September 17, 2019 indicating Najarian had joined SKUx's advisory board, not an Advisory Agreement with Priatek, and does not provide a non-compete.

In this underwhelming RICO conspiracy Count, Plaintiffs allege Najarian to have met "many prospective Priatek investors during a 7 city European Investor Roadshow." Sec. Am. Cpl., para. 663. This is not a cognizable predicate act. Confusingly, in support of this, Plaintiffs cite Exhibit 1 (an investor update which does not mention Najarian), Exhibit 66 (text messages by Tamboli in Sept. 2018 that do not mention Najarian), and Exhibit 90 (which does actually mention that Najarian will be on the roadshow). Collectively, with Exhibit 110, these exhibits and the allegation of

this Count utterly fail to state any claim against Najarian, much less one requiring the elevated standards of a RICO conspiracy claim.

### B. Count IV Fails to State a RICO Conspiracy Claim against Chidekel

Likewise, as best can be gleaned from the Complaint, Plaintiffs' allegations against David Chidekel for RICO conspiracy is a series of conclusory allegations. Sec. Am. Cpl. paras. 665-679. It appears that Chidekel is alleged to be in a criminal conspiracy because he is affiliated with SKUx. See, e.g., Sec. Am. Cpl., paras. 668, 669. Plaintiffs refer to a collection of disjointed and unconnected events with former members, officers and employees related to Bharvirkar's problematic actions before he ended his affiliation with Priatek. Apparently to avoid connecting any dots Exhibit 54 (a series of conclusory statements by John Colby in September 2018, apparently to Bharvirkar's attorney Jack Kiefner), Exhibit 61 (the agenda for a meeting to discuss Bharvirkar's removal), Exhibit 11 (Jeremy Ramos's September 23, 2019 email alleging Tinsley wanted to be president of crypto currency), and Exhibits 12 and 13 (Sampey's instruction to Bharvirkar to adhere to the board's instructions on September 10 and 11, 2018). In short, nothing amounting to an actionable claim of any kind against Chidekel is expressed in this Count. Chidekel could not possibly review this Count and have any idea of what predicate, criminal acts he is alleged to have committed, or when and where here was supposed to have committed them. The facts express a typical corporate dispute between internal factions at the company with differing views of how the faltering company could be saved rather than collapse.

With their typical ambiguity Plaintiffs apparently seek to allege acts of fraud in their references to Exhibits 12 and 13 by simply stating their conclusion that Chidekel authored the letters "with fraudulent misrepresentation of illegal activities occurring at Priatek." Sec. Am. Cpl., ¶ 673.

Plaintiff then maliciously state in a most conclusory fashion that "through his words and action, Chidekel agreed to the plan and also joined the conspiracy to carry out its multiple schemes and predicate acts." Sec. Am. Cpl., ¶ 679. There is no allegation in this Count that Priatek was injured by Chidekel. This conclusion is not plausible, and is better labeled absurd

C. **Fails to State a RICO Conspiracy Claim against Moshe Joshua and Dreamdaze Technology, Inc.**

In Count IV, Plaintiffs rely on identical allegations in their deficient RICO conspiracy claims against Joshua (Sec. Am. Cpl., paras. 704-714) and Dreamdaze (Id. at paras. 715-725). Plaintiffs start off with the same series of conclusory allegations that Joshua and Dreamdaze conspired to further SKUx-Enterprise's "objective to illegally take VendXOR from Priatek." Id. at paras. 708, 723. Plaintiffs do not provide a meaningful factual basis for the allegations. Instead, Plaintiffs' scant factual allegations reinforce the position that the RICO conspiracy claims are wholly without merit. For instance, Plaintiffs allege that pursuant to a works-for-hire contract, Joshua and Dreamdaze were paid[8] "to build the blockchain platform component that

[8] If Plaintiffs' claims were to survive the Motion to Dismiss, Joshua and Dreamdaze have potential counterclaims for non-payment of the amounts owed based on Priatek's failure to pay amounts due under the terms of the contract.

belonged to Priatek. (Exhibit 53)" Id. at paras. 710, 721. And, "SKUX-Enterprise invests the VendXOR platform technology into SKUX, LLC (sic)" without ever specifying what was actually contracted to be built and what was taken. See Sec. Am. Cpl. paras. 712, 723.

As is almost invariably true throughout the Complaint, the Exhibit referenced by Plaintiffs in support of the allegations provide facts that wholly undermine the allegation. Here, the Services Agreement (Sec. Am. Cpl., Exhibit 53) provides a "Defined Scope" that specifies the scope of work that Joshua and Dreamdaze are performing as integrating the "Omnigate" system and creating a cryptocurrency for Priatek's VendXOR. Despite concluding that Dreamdaze and Joshua "joined the SKUX-Enterprise to facilitate the use of the digital VendXOR technology from Priatek, LLC" (Sec. Am. Cpl., paras. 709, 720), Plaintiffs allegations do not state that SKUx or Defendants utilizes any cryptocurrency or "Omnigate" blockchain platform component or even how could SKUx or Defendants could use any such technology when SKUx does not utilize Omnigate or any cryptocurrency.[9] Furthermore, the Service Agreement clearly states that anything other than what was specifically designed for Priatek as outlined in the Defined Scope, was owned and could be used by Joshua and Dreamdaze in subsequent projects.[10] Without allegations that

[9] While outside the purview of a motion to dismiss, Defendants have conclusive forensic proof that the technology for SKUx is in no way related or derived from any technology created for VendXOR.

[10] Section 3(c) states "[Priatek] acknowledges and agrees that certain background technology not first produced or created by or for the [Dreamdaze] as a result of or related to the performance of the Defined Scope or Additional Services, but included in or necessary for use in the or with the Works (collectively, the "Background Technology"), may be incorporated into the Works. Such Background

Omnigate and cryptocurrency technology that Dreamdaze designed is being used by SKUx, Joshua's and Dreamdaze's later involvement with SKUx after leaving Priatek categorically fails to form a basis of any RICO claim. Just as Plaintiffs could not show how Tinsley converted a trade secret from VendXOR, Plaintiffs allegations are silent as to how Joshua or Dreamdaze illegally provided software technology for a blockchain cryptocurrency to SKUx "to invest" when SKUx does not utilize any cryptocurrency or could use any such technology.

The Plaintiffs then return to the same, oft-repeated allegation that on September 22, 2018, the SKUx-Enterprise (apparently including Joshua and Dreamdaze) demanded control of Priatek's VendXOR blockchain project. First, even taking the allegations in a light most favorable to Plaintiffs, it is unquestionably clear that from allegations and exhibits in the Complaint, that Tinsley quit Priatek because of Bharvirkar. Bharvirkar's mistreatment of workers, self-dealing, SEC violations, and financial mismanagement of Priatek and the VendXOR project had created a toxic environment. While Tinsley and the others who left and later formed SKUx were among the first to raise the issues, these concerns were not insubstantial. The emails showing negotiations related to Movants continuing the VendXOR project, if Bharvikar was no longer in charge, does not show any illegally activity. The only

Technology shall belong exclusively to [Dreamdaze], which shall be the sole proprietor of the of the Background Technology from the time of its creation, and of all right, title and interest therein throughout the world…[Dreamdaze] may use any and all Background Technology in other projects for other clients."

plausible explanation is that management and employees of start-up company disputed how it should be run.

## VIII. The Court Lacks Subject Matter Jurisdiction Over the Claims

Federal courts are courts of limited jurisdiction. The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. United States v. Rojas, 429 F.3d 1317, 1320 (11th Cir.2005). The facts showing the existence of jurisdiction must be affirmatively alleged in the complaint. Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir.1994). Plunkett v. Poyner, No. 08-60953-CIV-COHN, 2009 WL 5176542, at *3 (S.D. Fla. Dec. 22, 2009)

The Complaint alleges that this Court "has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 18 U.S.C. § 1964(c) and 18 U.S.C.A. § 2201 (Declaratory Judgment Act)" and "[s]upplemental jurisdiction for state law claims is conferred by 28 U.S.C. § 1367" as the Plaintiff's (sic) state and federal claims arise out of a common nucleus of operative facts…" Sec. Am. Cpl. paras. 1-2.

Count I of the Second Amended Complaint seeks recovery for Declaratory Judgment. Counts II, III, IV of the Complaint set forth the civil RICO claims against Movants. As provided in greater detail above, Movants have shown that Plaintiffs have failed to state a civil RICO claim. Accordingly, the RICO claims, as pleaded in the Complaint, cannot support federal question jurisdiction. Plunkett v. Poyner, No. 08-60953-CIV-COHN, 2009 WL 5176542, at *4–5 (S.D.Fla. Dec. 22, 2009). Likewise, Plaintiffs have failed to sufficiently allege a claim against any Defendants

for Declaratory Judgment such that the claim could provide for federal question jurisdiction. Without federal question jurisdiction, there is likewise no basis for supplemental jurisdiction.

**A. Count I Fails to State a Claim for Declaratory Judgment and Cannot Support Jurisdiction.**

"Article III of the U.S. Constitution 'limits the jurisdiction of federal courts to cases and controversies.'" Hartford Cas. Ins. Co. v. Intrastate Const. Corp., 501 F. App'x 929, 937 (11th Cir. 2012) (quoting Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1189 (11th Cir. 2011)). Similarly, 28 U.S.C. § 2201 provides that a declaratory judgment may only be issued in the case of 'actual controversy,' that is, a 'substantial continuing controversy between parties having adverse legal interests.'" Id. (quoting Emory v. Peeler, 756 F.2d 1547, 1551-52 (11th Cir. 1985)). "This 'continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.'" Id. (quoting Emory, 756 F.2d at 1552). "Although a case may have involved an actual controversy initially, the case becomes moot 'when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" Id. (quoting Zinni v. ER Solutions, Inc., 692 F.3d 1162, 1166 (11th Cir. 2012); see also Christian Coal. of Fla., Inc., 662 F.3d at 1190 (stating that, for purposes of Article III, "the controversy must be extant at all stages of review, not merely at the time the complaint is filed").

The "threshold question in all cases arising under the Declaratory Judgment Act is whether a justiciable controversy exists." Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1985). Parties asserting the Declaratory Judgment Act and imploring the court to exercise its discretion to resolve a "justiciable controversy" must show, at a minimum: (1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant, (2) that the injury fairly can be traced to the challenged action, and (3) that the injury is likely to be redressed by a favorable decision. U.S. Fire Ins. v. Caulkins Indiantown Citrus, 931 F.2d 744, 747 (11th Cir. 1991).

First, Count I is facially incomplete. Count I of the Complaint states that it is a "derivative claim for a declaratory judgment." Sec. Am. Cpl., p. 54. But the claim contains only four numbered paragraphs, and none of them ask the Court *to declare* anything—the apparent request for relief appears at paragraph 325 where it states "Plaintiffs request removal of the current board via an election of the board […]." Id. para. 325. Nor do the Plaintiffs identify what the basis for any declaration may be. Thus, Count I fails to allege a complete claim.

Next, looking to the three elements required to present a claim under the Declaratory Judgment Act, Plaintiffs have failed to allege the minimal elements to state a claim. The first element is missing at Count I, because Plaintiffs fail to identify "a threatened or actual injury," much less any injury resulting from "alleged conduct" by "the defendant." U.S. Fire Ins., 931 F.2d at 747; Sec. Am. Cpl. paras. 324-326. Next, Count I omits the second mandatory element "that the injury fairly can be traced

to the challenged action." U.S. Fire Ins., 931 F.2d at 747. Plaintiffs do not even allege a conclusory allegation that there was a challenged action, let alone an injury that could be traced to the challenged action. Sec. Am. Cpl., paras. 324-226. Finally, the third element needed for a claim seeking relief pursuant to the Declaratory Judgment Act is "that the injury is likely to be redressed by a favorable decision." U.S. Fire Ins., 931 F.2d at 747. The only allegation in Count I seemingly oriented to this element is at paragraph 326, which only cryptically states that "[a] new board would have its interest aligned with Priatek's majority investors […]." Sec. Am. Cpl., para. 326. The pleading requirements of Twombly and Iqbal apply to claims for declaratory relief and Plaintiffs do not supply the factual allegations meeting this pleading standard. See, e.g., GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1254-55, 1258-59 (11th Cir. 2012)(finding the plaintiff's declaratory relief claim "not plausible" and insufficient to survive a motion to dismiss after "searching" the complaint "to no avail" to find factual allegations "that could possibly be construed" to allege a complete claim). Thus, the third element for declaratory relief under the Act is absent. Count I fails on its face to state a claim under the Declaratory Judgment Act, and should be dismissed.

Additionally, Plaintiffs have failed to identify and join the necessary parties for a claim for Declaratory Judgment. As best as can be understood from the Complaint, "Plaintiffs request the removal of the current board via an election of the board since current board has perpetual control and has breached its contract and its fiduciary duties to Priatek." Sec. Am. Cpl., para. 325. According to the paragraph 15 of the Complaint, the current of board of Priatek consists of 5 members, but fails to identify

who each of them are. Through the exhibits attached to the Complaint, it can be determined that the current board members of Priatek are Greg Karsh, Scott Matthews, Mike Brazerol, Bruce Kamm, and Gary Clarin. See Sec. Am. Cpl., Ex. 8. Despite claiming all the board members have breached their contracts and fiduciary duties and should be removed, Scott Matthews is the only party named as a defendant.

Federal Rules of Civil Procedure Rule 19 requires that, under certain circumstances, a person must be joined as a party in an action. Fed. R. Civ. P. 19(a). Specifically, a party must be joined if "in that person's absence, the court cannot accord complete relief among existing parties" or "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Becker Landscaping & Irrigation, Inc. v. EGI, Ltd., No. 08-14214-CIV, 2010 WL 11504517, at *1 (S.D. Fla. Jan. 21, 2010),citing Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263, 1280 (11th Cir. 2003). Here, Plaintiffs have failed to join indispensable parties by failing to name the members of the board they seek to replace.

**B. There is No Basis for Supplemental Jurisdiction.**

Because the remaining claims do not have a basis for federal jurisdiction, this Court should also dismiss any remaining state law claims. Under 28 U.S.C.A. § 1367(c)(3), district court may decline to exercise supplemental jurisdiction over state

law claims when the district court has dismissed all federal claims. The United States Supreme Court in United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S. Ct. 1130, 1139 (1966) made clear that "if the federal claims are dismissed before trial, even though not insubstantial a jurisdictional sense, the state claims should be dismissed as well." Generally, "where the only federal claims have been dismissed and the case is before a federal district court solely through supplemental jurisdiction, a court should decline to exercise supplemental jurisdiction." Austin v. Metro Dev. Grp., LLC, 571 F.Supp. 3d 1279, 1293-94 (M.D. Fla. 2021).

## IX. Each Count Against Movants Should Be Dismissed With Prejudice

In the Eleventh Circuit, there are a number of factors that alone justify the dismissal of a lawsuit with prejudice, rather than allowing a further opportunity for the plaintiff to amend, and these include: (i) not complying with Rule 8 in successive pleading opportunities, (ii) failing to follow a court's instructions as to how to replead, (iii) an intentional failure to plead precisely, or pleading in a manner that taxes judicial resources and invites satellite litigation, or where (iv) it becomes obvious from the depth of the deficiencies in a pleading that any amendment would be futile as an attempt to cure them. See Abimbola v. Broward City, 266 Fed. Appx. 908-910 (11th Cir. 2008); Lampkin-Assam v. Volusia City Sch. Board, 261 Fed. Appx. 275, 276 (11th Cir. 2008). While styled as the Complaint, the most recent amendment is Bharvirkar's fourth attempt at sufficiently pleading claims under Federal Rules. Taking into account the prolixity, irrelevance, predominantly-conclusory and incongruity of the 1156 paragraphs of the Complaint, and its precursors, it becomes evident that Plaintiffs

are incapable of amended the complaint that would not be defective and subject to dismissal. Furthermore, prior to Plaintiffs' repleading in the Complaint, Defendants informed Plaintiff of the gross deficiencies and factual baselessness of the claims that had previously being alleged. Because the facts simply do not support claims, no amount of repleading will serve any meaningful end. Accordingly, the Court should dismiss the claims against Defendants, if not the entirety of the lawsuit, with prejudice.

## X. Conclusion and Prayer for Relief

For the foregoing reasons, Movants respectfully request for the dismissal of all claims in the Second Amended Complaint asserted against them, with prejudice to refiling or repleading, and for such other relief as the Court deems just and proper.

This 8th day of November, 2022.

**SCHULTEN WARD TURNER & WEISS, LLP**

*/s/ Kevin L. Ward*
Kevin L. Ward, GA Bar No. 737020*
J. Zachary Zimmerman, GA Bar No. 785135*
Jason B. Malone, GA Bar No. 857777*
260 Peachtree Street, N.W., Suite 2700
Atlanta, Georgia 30303
Phone: 404-688-6800
k.ward@swtwlaw.com
z.zimmerman@swtwlaw.com
j.malone@swtwlaw.com
**Admitted Pro Hac Vice*

**CAVENDISH PARTNERS, P.A.**
Michael Cavendish, FL Bar No. 0143774
200 West Forsyth Street, Suite 1300
Jacksonville, FL 32202
Phone: 904-515-5110
mcavendish@cavpartners.com
*Counsel for Movants.*

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g)(2), counsel for Defendants certifies that they conferred with Plaintiffs' counsel before filing this motion. Counsel for the parties agree and have consented to the submission of this motion.

Respectfully submitted this 8th day of November 2022.

**SCHULTEN WARD TURNER & WEISS, LLP**

*/s/ Kevin L. Ward*

Kevin L. Ward*
GA Bar No. 737020
260 Peachtree Street, N.W., Suite 2700
Atlanta, Georgia 30303
Phone: 404-688-6800
k.ward@swtwlaw.com

**Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of November 2022, I electronically filed a true and correct copy of the foregoing through the Court's CM/ECF filing system, which will send notice of electronic filing to all registered parties.

*/s/ Kevin L. Ward*
Kevin L. Ward*
GA Bar No. 737020

**Admitted Pro Hac Vice*